**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AL'S AUTO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO.  08-cv-731 |
| | ) | |
| HOLLANDER, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

RUFE, J.                                                                                       **November 4, 2008**

   Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint and

Plaintiff's Response in Opposition.  Defendants' Motion asserts that Plaintiff has failed to state a

claim upon which relief may be granted for breach of contract since the Express Warranty, Remedy

Clause and Consequential Damages Disclaimer are each valid and enforceable as written; that

Plaintiff's fraud claims are untimely under 42 Pa. Cons. Stat. Ann §5524(7); and that two of the

named Defendants, Audatex and Solera, are not parties to the contract in question.  Defendant seeks

dismissal of the Complaint in its entirety and with prejudice for the reasons that follow, the Court

will grant Defendants' Motion in part and deny Defendant's Motion in part.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

   As this matter is before the Court on a motion to dismiss, we recite the facts as

alleged in the Complaint and assume they are true for the purpose of this motion.[1]  Plaintiff Al's

Auto Parts ("Plaintiff") is a Pennsylvania business corporation specializing in selling auto parts with

---

[1] See Rogers v. Am. Can Co., 305 F.2d 297, 318 (3d Cir. 1962).

its primary business facility located in Trevose, Bucks County, Pennsylvania. Defendant Hollander, Inc. is a Delaware business corporation with its primary place of business in Plymouth, Minnesota that develops and sells software systems to assist businesses with information management. Hollander was formerly known as ADP Hollander, Inc., which Hollander, Inc. claims to be the successor in interest to it (collectively "Hollander"). However, Plaintiffs allege that according to public filings with the United States Securities and Exchange Commission ("SEC") a Delaware corporation called Solera Holdings Inc., ("Solera") acquired all of ADP Hollander Inc.'s stock via Solera subsidiary Audotex North America Inc. ("Audotex").[2] Accordingly, Plaintiff names solera and Audatex as Defendants in interest as well.

Since approximately 1989 Plaintiff successfully managed its business inventory through the use of Powerlink 1.0 HYMS computer system (the "Former System") which was developed, sold, and installed by Hollander.[3] At some time in late 2001 or early 2002, Hollander advised Plaintiff that they would no longer offer software enhancements for the Former System.[4] Hollander also informed Plaintiff that they would be selling Powerlink 2.0 (the "New System") and that it would not only perform the same functions as the Former System, but that the New System was a generally superior program.[5]

Plaintiff claims that the Former system was integral to its ability to do business in a number

---

[2] Compl. ¶ 7.

[3] Comp. ¶ 11.

[4] Compl. ¶ 12.

[5] Compl. ¶ 14.

of ways including the storage of sales record[6] and inventory control.[7]  Moreover, Plaintiff alleges that Hollander had full knowledge of the extent to which Plaintiff had come to rely on the workings of the Former System in its day to day business operations. Plaintiff further alleges that Hollander never advised Plaintiff of the possibility of any business disruptions resulting from use of the New System.[8] Therefore, on or about June 2002, due to its reliance on Hollander's programs in its business operations and the representation that the New System offered upgraded platforms, Plaintiff acquired the New System from Hollander.

Plaintiff alleges that following conversion to the New System they "sustained sixteen months of miserable systematic failure."[9] Among the alleged problems with the transition were that Plaintiff lost the its ability to create inventory reports, was denied access to a considerable amount of inventory and customer data vital to business operations, was unable to use its wireless network and forced to install a new one, and lost significant time in employee productivity because the New System did not perform the promised functions. Plaintiff claims that the cumulative effect of such problems was a loss of $503, 279.00 in sales in the year 2002 and a loss of profits of $241,4400.00.[10]

Plaintiff filed Complaint in the Eastern District of Pennsylvania.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 since Plaintiff is a citizen of Pennsylvania and Defendants are dual citizens of Delaware and Minnesota.  The amount in controversy is alleged to

---

[6] Compl. ¶ 20.

[7] Compl. ¶ 21.

[8] Compl. ¶ 25.

[9] Compl. ¶40

[10] Id.

exceeds $75,000, exclusive of interest and costs.  Because the contract at issue was made and intended to be performed within the Commonwealth of Pennsylvania, the law of Pennsylvania governs this Court's decisions regarding the contract issues in this case. Plaintiff's Complaint alleges breach of express warranty (Count I), breach of warranty of merchantability (Count II), breach of warranty of fitness for a particular purpose (Count III), fraud (Count IV), commercial coercion (Count V), misrepresentation (Count VI), intentional and culpable harm (Count VII) and fraudulent concealment (Count VIII).

The Complaint misnumbers Plaintiff's allegations, listing both its charge of intentional and culpable harm and the charge of fraudulent concealment as "Count VII."  The Court will view "fraudulent concealment" as "Count VIII" of the Complaint and address each of the numbered counts in turn.

## II.   DISCUSSION

### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure  12(b)(6), a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.[11]  A court may grant a motion under Rule 12(b)(6) only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved."[12]

### B.  Breach of Contract (Counts I-III)

The Complaint lists as its first three counts the contract claims of breach of express warranty,

---

[11] Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

[12] D.P. Enter. Inc., v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

breach of warranty of merchantability, and breach of warranty for a particular purpose.  Defendant asserts that in Pennsylvania, commercial parties are free to contractually limit or modify remedies associated with express warranties, including a complete disclaimer of consequential damages.[13] With regard to Counts II and III, Defendant cites the Implied Warranty Disclaimer and the Alternative Remedy Clause in the original contract between the parties as valid as a matter of law, and contends that those clauses expressly bar the allegations in Counts II and III..[14] Arguing that Plaintiff makes no effort to justify disregarding these provisions, Defendant maintains that the clauses are fully enforceable.  Plaintiff counters that the Complaint has set forth specific facts pertaining to Hollander's knowledge of the extent to which Plaintiff relied on Hollander's product to maintain business operations. Therefore Hollander deprived Plaintiff of any meaningful choice in contracting to convert to the New System and said contract clauses are negated as unconscionable.

"The test of 'unconscionability' is two-fold.  First, one of the parties to the contract must lack a 'meaningful choice' about whether to accept the provision in question.  Second, the unreasonable provision must 'unreasonably favor' the other party to the contract."[15] However, a determination of unconscionability in the context of a commercial contract is very specific to that industry's practices. "In determining whether a clause is unconscionable, the clause is to be considered in light of the general commercial background and needs of the industry in question. And matters pertaining to the commercial setting, purpose and effect of the clause are relevant."[16] Contrary to Defendant's

---

[13] 13 Pa. Cons. Stat. Ann. § 2719(a), (d).

[14] Compl. Ex. A ("Al's Auto Contract") ¶3

[15] Hornberger v. GMC, 929 F. Supp 884, 891 (E.D. Pa. 1996) (quoting Koval v. Liberty Mut. Ins. Co., 531 A.2d 487, 491 (Pa. Super. 1987). (citations omitted)).

[16] Mitsubishi Corp.v. Goldmark Plastic Compounds, Inc., 446 F. Supp. 2d 378, 386 (W.D. Pa. 2006).

contention that <u>Mitsubishi</u> holds a limitation of remedy clause in a commercial context is prima facie conscionable, it instead says that a limitation of remedy clause in a commercial context is "not prima facie unconscionable."[17]   Hence, the specifics of the situation and the context of the contract in question, as well as the industry of the parties to that contract are highly relevant to a determination of unconscionability.  Plaintiff has put forth a detailed Complaint enumerating specific elements and facts related to the effects of the contract in question to the particulars of the automotive parts industry.  They specifically allege that Hollander's failure to reveal the possibility that conversion to the New system could result in loss of inventory and sales records, which are of particular importance within the field of automotive parts sales contributed to the unconscionability of such clauses. Such details more than "raise a right to relief above the speculative level" on the question of unconscionability and therefore Counts I and II survive this Motion to Dismiss.

Count I differs from Counts II and III in that it alleges breach of an express instead of implied warranty.  Plaintiff argues that as a remedy the express warranty "failed of its essential purpose," and therefore it may seek relief under the Uniform Commercial Code ("UCC").  Defendant counters that its "commercially reasonable efforts" to repair the New System satisfied the elements of the express warranty for "functional and technical specifications" in the original sales agreement. A remedy "fails of its essential purpose" when it "deprives either party of the substantial value of the bargain."[18]   "[w]hen the exclusive remedy in a limitation on liability provision failed in its essential purpose, the damages disclaimer within the remaining contractual clause is rendered

---

[17] <u>Id</u>.

[18] <u>Caudill Seed & Warehouse Co. v. Prophet 21</u>, Inc., 123 F. Supp. 826, 831 (E.D. Pa. 2000). <u>See also</u> 13 Pa. Cons .Stat. § 2719.

inoperative and the buyer may involve all the remedies available under the UCC."[19]

Plaintiff has asserted that the 16 months Defendant spent attempting to remedy the dysfunctions of the New System effectively denied them the benefit of the original bargain in that it stymied Plaintiff's ability to conduct business at its former level of efficiency and that it incurred a great deal of extra costs trying to minimize the impact of the New System's deficiencies. In the Complaint Plaintiff details the consequences in terms of loss of employee productivity, loss of sales and loss of profits as well as specific extra costs following installation of the New System in the Complaint ¶¶31-40.  Via discovery, Defendants may at a later time be able to show that it fulfilled their end of the bargain by making every effort to keep Plaintiff's losses at a minimum. However, at this pleadings stage, Plaintiff has adequately stated reasons why it was denied of the substantial value of the bargain, specifically the details of the 16-month period of severe business disruption. Therefore Plaintiff should be allowed to seek all available remedies under the UCC, including consequential and incidental damages. The claim will survive.

### C.  Tort Claims (Counts IV-VIII)

Defendant asserts that Counts IV-VIII of the Complaint, all of which encompass various allegations of fraud, are time barred under the Pennsylvania statute mandating a two-year limitation to bring all tort claims.[20] Plaintiff argues that those claims are meant to meld with and be supportive of the expanse of the breach of the contract claims, and asks that the Court strike the ad damnum clauses contained in those Counts, but allow the factual averments therein to remain part of the

---

[19] Amsan, LLC v. Prophet 21, Inc., 2001 U.S. Dist. LEXIS 16698 at *8 (E.D. Pa.)

[20] See 42 Pa. Cons. Stat. Ann. § 5524(7)

Complaint. [21] Plaintiff admits "that it can no longer pursue torts claims against Defendants."[22] Therefore the Court will dismiss Counts IV-VIII. Plaintiff's request to preserve the factual averments contained in those Counts is unnecessary. While the tort claims themselves will be dismissed, as the case proceeds into the discovery stage Plaintiff is free to fully explore the scope of the claimed breach and may seek evidence to prove how, when and to what extent that breach occurred, including those actions alleged in Counts IV-VIII.  However that evidence will go to the scope of the alleged breach, not separate tort claims.

Pennsylvania law, which this Court is bound by with regard to both the contract and tort claims discussed therein, strictly construes statutes of limitation.[23]  Defendant is correct in stating that the expiration of any applicable statute of limitation is generally raised as an affirmative defense pursuant to Federal Rule of Civil  8(c).  However, as here, the untimeliness of Plaintiff's claim may also be raised by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[24]  There is no argument about when the claims alleged in the Complaint arose.  At the very earliest, any potential fraud began in late 2001 when Hollander informed Plaintiff that the Former System would no longer be available.  However, the facts of the Complaint most likely would place the genesis of any fraud at June, 2002 when the New System was installed, meaning that any tort claims would have been untimely after June 2004.  Even measuring the timeline in the best possible light for Plaintiff and starting the tolling period from October 2003, 16 months after the New System was

---

[21] Pl's Resp. to Mot. to Dismiss at *29

[22] Id.

[23] See Gustine Uniontown Assoc., Ltd. v. Crane Rental, Inc., L.P., 842 A.2d 334, 346 (Pa. 2004).

[24] See Victaulic Co. v. Tieman, 499 F.3d 227, 235 (3d Cir. 2007).

installed and when Plaintiff would be able to ascertain the full extent of the damages incurred from the alleged fraud, any tort claims would have run the statute by late 2005. It is clear that Plaintiff is past the time period within which to bring a tort claim, which Plaintiff admits, and Counts IV-VIII will be dismissed as separate tort claims.

### D. Claims Against Audatex and Solera

Defendant argues that all claims should be dismissed against Audotex and Solera as successors in interest to Hollander because they were not parties to the contract at issue. Defendants argue correctly that privity of contract is a longstanding pillar in Pennsylvania contract law and that the contract in question was entered into solely between Plaintiff and Hollander. However Defendants fail to address the specifics of the transaction that brought Hollander, Audotex and Solera together as business entities. It is generally true that a company which buys the assets of another company is not liable for the debt or liabilities of the purchased company.[25] However, there are four exceptions to the general rule 1.) the purchaser expressly or impliedly agrees to assume the obligation; 2.) the transaction amounts to a consolidation or merger; 3.) the purchasing company is merely a continuation of the selling corporation; or 4.) the transaction was fraudulently entered into to escape liability.[26] Plaintiff claims that because SEC filings indicate that Audatex acquired all outstanding stock of the former ADP Hollander that the transaction may have been a "*de facto merger*," pursuant to the second listed exception, making Audatex and Solera, of which Audatex is a subsidiary, successors in liability to the contract at issue.

There are four factors the court considers when determining whether there was a de facto

---

[25] See Luxliner P.L. Export Co. V. RDI/Luxliner Inc., 13 F.3d 69 (3d Cir. 1986).

[26] Polius v. Clark Equipment Co., 802 F.2d 75, 77 (3d Cir. 1986).

merger:

    1.  A continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets and general business operations;

    2.  A continuity of shareholders which results from the purchasing corporation paying for the acquired assets with share of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation;

    3.  The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible;

    4.  The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.[27]

"The courts have held that the second factor, the transfer of stock, is a key element in finding a de facto merger because it represents a continuity of ownership."[28] They have further stated that "[the] essential inquiry into the de facto merger context is whether the shareholders of the predecessor corporation became shareholders of the successor through the successor's use of stock in payment for the predecessor's assets."[29]  Therefore, the quintessential question the Court must ask in this situation is whether Audatex paid for Hollander's assets using cash, or paid by using its own stock.

In its Response to this Motion Plaintiff claims that it requested information from Defendant Hollander relating to the proper parties to this litigation before filing its Complaint and received nothing in return.[30] In its memorandum supporting the instant motion Defendant made no attempt

---

[27] <u>Philadelphia Elec. Co. v. Hercules, Inc.</u>, 762 F.2d 303, 310 (3d Cir. 1985 )

[28] <u>Stutzman v. Synncro Machine Co.</u>, U.S. Dist. LEXIS 5308 at *7 (E.D. Pa. 1991).

[29] <u>Tracey v. Winchester Repeating Arms Co.</u>, 745 F.Supp. 1099, 1109-10 (E.D. Pa. 1990).

[30] Pl.'s Resp. at *25

to characterize or provide details regarding the nature of the transactions that brought the former ADP Hollander and Audatex together. Hence, the question of how Audatex purchased Hollander, whether through  payment of cash or in stock, remains an open one.  Since Plaintiff stated in Complaint that SEC filings suggest that some  transfer of stock did take place.  In the absence of any counter argument or forthcoming details from Defendant on the matter, this Court finds Plaintiff's allegation referencing SEC filings as adequate for the pleading stage. Audatex and Solera will continue as parties in this matter past the pleadings stage.

III.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in part and dismissed in part.  We will dismiss Plaintiff's tort claims including fraud (Count IV); commercial coercion (Count V); misrepresentation (Count VI); intentional and culpable harm (Count VII); and fraudulent concealment (Count VIII). The court will deny the Motion is part as to Plaintiff's contract claims (Counts I-III), which shall remain. Moreover, Audatex and Solera will remain parties to this case as Defendants at this time.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AL'S AUTO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | **NO.  08-cv-731** |
| | ) | |
| HOLLANDER, INC., SOLERA | ) | |
| HOLDINGS, INC., AUDATEX | ) | |
| NORTH AMERICA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

_____

**ORDER**

        **AND NOW**, this 24th day of October, 2008, upon consideration of Defendant's

Motion to Dismiss [Doc. No. 5], Plaintiff's Response in Opposition [Doc. No. 14],  it is hereby

**ORDERED** that Defendant's Motion is **GRANTED** in part, as follows:

1.        Plaintiff's tort claim based on fraud (Count IV) is **DISMISSED** with prejudice;

2.        Plaintiff's tort claim based on commercial coercion (Count V) is **DISMISSED**
          with prejudice;

3.        Plaintiff's tort claim based on misrepresentation (Count VI) is **DISMISSED** with
          prejudice;

4.        Plaintiff's tort claim based on intentional and culpable harm (Count VII) is
          **DISMISSED** with prejudice;

5.        Plaintiff's tort claim based on fraudulent concealment (Count VIII) is
          **DISMISSED** with prejudice

Defendant's Motion is **DENIED** in part as follows:

1.      Plaintiff's contract claimed based on breach of express warranty (Count I) shall

        remain;

2.      Plaintiff's contract claim based on breach of warranty of merchantability (Count

        II) shall remain;

3.      Plaintiff's contract claim based on breach of warranty of fitness for a particular

        purpose (Count III) shall remain.

It is further **ORDERED** that Solera Holdings, Inc. and Audatex North America, Inc. shall

remain as Defendants in the above-captioned case at this time.

It is so **ORDERED**.


**BY THE COURT:**

**s/Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**

13