**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
                                                          :
AL'S AUTO INC.,                                           :
                         Plaintiff,                       :
            v.                                            :       CIVIL NO. 08-731
                                                          :
HOLLANDER, INC., et al.,                                  :
                         Defendants.                      :
                                                          :
```

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                              **September 29, 2010**

Before the Court is Defendant's Motion for Summary Judgment on Plaintiff's Complaint, and all responses and replies thereto. The claims remaining in this case following the Court's ruling on Defendant's Motion to Dismiss are: Count I, Breach of Express Warranty; Count II, Breach of the Warranty of Merchantability; and Count III, Breach of Warranty of Fitness for a Particular Purpose. Defendants have filed Motions for Summary Judgment on all three Counts, claiming that the contract between the parties limited remedies associated with the express warranty and bars claims under implied warranties through fully enforceable contract clauses. Plaintiff appears to concede that its claims against Defendants Solera Holdings, Inc. and Audatex North America, Inc. should be dismissed, and this Court will dismiss all claims against those parties by the attached Order. As to Defendant Hollander, Inc. (hereinafter "Defendant"), Plaintiff argues that the three contractual provisions relied upon by Defendant are invalid, as the limited remedy "fails of its essential purpose" and the preclusion of implied warranties is unconscionable. For the reasons that follow the Court denies Defendant's Motion for Summary Judgment.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Al's Auto, Inc. is a Pennsylvania business corporation specializing in selling auto parts, with its primary place of business in Trevose, Pennsylvania.  Defendant is a Delaware corporation that develops and sells business information management software systems.  Defendant's primary place of business is in Plymouth, Minnesota. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.  Counts IV-VII of the Complaint, all tort claims, were previously dismissed as time-barred under Pennsylvania law.  The remaining counts, Counts I-III, all contract claims, are the subject of the present Motion.[1]

One of Defendant's software products is the PowerLink system.  From 1989 through 2002, Plaintiff successfully used earlier iterations of Hollander's business inventory software, first using HYMS and later PowerLink 1.0, to manage the inventory, store sales records and track sales trends, billing, and other aspects of Plaintiff's auto parts recycling business.  In 2002, Defendants allegedly told Plaintiff they would no longer support and update PowerLink 1.0 once  PowerLink 2.0 was launched.[2]  Defendants also allegedly asserted that PowerLink 2.0 would provide a significant enhancement to PowerLink 1.0.[3]  Plaintiff entered into a contract with Hollander to purchase PowerLink 2.0.

The contract entered into for the sale of PowerLink 2.0 disclaims implied warranties

---

[1] The parties agree that Pennsylvania law controls this case, and the Court's task, as a federal judge sitting in diversity, is to apply substantive state law as interpreted by the Supreme Court of Pennsylvania to the facts at issue.  See Connecticut Mut. Life Ins. Co. v. Wyman, 718 F.2d 63, 65 (3d Cir. 1983).  In the absence of guidance from the highest state court regarding the legal issues raised in Count I, this Court will predict how that Supreme Court of Pennsylvania would rule.  Robertson v. Allied Signal, Inc. 914 F.2d 360, 378 (3d Cir. 1990).

[2] Pl. Tab I, Ex. 4 at 40, 189-90.

[3] Pl. Tab I, Ex. 4 at 38-39, 41, 45-46.

and also any liability for incidental and consequential damages.[4] Plaintiff characterizes the contract

for PowerLink 2.0 as a pre-printed, standard form contract, which it believed was non-negotiable.[5]

Defendant notes that essentially the same form contract was used when Plaintiff purchased

PowerLink 1.0,[6] and yet Plaintiff did negotiate the price term in that earlier contract.[7] The Court

notes that the price term is <u>not</u> preprinted on the contract, but the terms relevant to this dispute are

pre-printed terms.

Defendant emphasizes that Plaintiff's officers stated in their depositions that they had

read and understood the contract terms at issue when they entered into the contracts, that at the time

of signing they were aware of the limitations on remedies and liability, and that they nevertheless

believed that the contract was fair.[8] Defendant also notes that Plaintiff admitted that it was aware

that Hollander's competitors had office management products on the market, yet made the business

decision to purchase Defendant's PowerLink 2.0.[9] Plaintiff points out that each of the 175,000-

200,000 parts in its inventory was labeled with a unique number created so that it could be tracked

using Defendant's PowerLink system, and changing to a new software system would have required

re-labeling of each and every part.[10] In addition, a new system would require retraining of every staff

---

[4]Al's Auto PowerLink 2.0 Contract (hereinafter "Contract")

[5] Def. Ex. A at 85; Def. Ex. C at 24-25, 38; Pl. Tab I, Ex. 1 at 129; Pl. Tab I, Ex. 4 at 101-102; Pl. Tab I, Ex. 5 at 5, 19.

[6] Def. Ex. B.

[7] Def. Ex. C at 24, 129.

[8] Def. Ex. A at 77-84, 130.

[9] Def. Ex. A at 106; Def. Ex. C at 37.

[10] Def. Ex. A at 106; Def. Ex. C at 37; Pl. Tab I, Ex. 1 at 25, 48-49, 55.

member.  Given these logistical problems and Plaintiff's nearly twenty years of satisfaction with

Defendant's products, Plaintiff did not consider competing products.

Plaintiff alleges that Defendant learned that there were serious problems with

PowerLink 2.0 during Beta testing at the yard of automobile parts dealer Morris Rose.[11]  Some of

the problems could not be resolved without software patches or updates, but several of the necessary

programming changes had not been made prior to the sale of the software to Plaintiff.[12]  However,

under pressure to get PowerLink 2.0 to market,[13] Defendant failed to disclose these problems to

Plaintiff, and instead assured Plaintiff that version 2.0 would be an improvement over PowerLink

1.0.[14]

Plaintiff claims PowerLink 2.0 made it impossible to create inventory reports and

reports based on customer and sales data, and rendered Plaintiff's wireless network useless.

Specifically, Plaintiff claims that immediately after installation of PowerLink 2.0, "Al's Auto

experienced numerous system crashes, speed problems, network and server issues, functional

problems, and problems customizing reports."[15]  In addition, the program deprived Plaintiff access

to historic sales information, and would not let Plaintiff zero out a customer's billing account,

causing it to send out bills to customers who had paid in full.[16]  Defendant's brief admits that "for

months [following installation], Hollander devoted significant resources to Al's Auto, repeatedly

---

[11] Def. Ex. C at 23-40; Pl. Tab II, Ex. 31.

[12] Pl. Tab I, Ex. 5 at 19-25, 42-43; Pl. Tab II, Ex. 4; Pl. Tab II, Ex. 42.

[13] Pl. Tab I, Ex. 4 at 17-18, 72-76, 229-230;  Pl. Tab I, Ex. 5 at 25; Pl. Tab II, Ex. 4.

[14] See Note 3, *supra*.

[15] Citing, Pl. Tab I, Ex. 6 at 60-62.

[16] Pl. Tab I, Ex. 1 at 142, 146.

sending teams of Hollander personnel to Al's Auto facility" and installing software patches or updates to repair problems in July, August and October 2002.[17] Plaintiff claims it took Defendant approximately sixteen months to resolve the software problems to Plaintiff's satisfaction, and notes that even now PowerLink 2.0 does not perform all the functions PowerLink 1.0 performed,[18] nor does it process information as quickly.[19]

Plaintiff claims it suffered significant business losses in 2002 ($503,279 in sales and $241,440 in profits) due to PowerLink 2.0's software problems, and now seeks to recoup these losses in damages. Defendant argues that because Plaintiff's tax returns show an increase in total income for every year, beginning in 2003,[20] Plaintiff suffered no damages from the installation of PowerLink 2.0 in 2002.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[22] A dispute about a material fact is "genuine" if the evidence presented "is such that

---

[17] Defendant did not create a "backward conversion process" to allow users to convert the computer system back to PowerLink 1.0 once PowerLink 2.0 was installed. Pl. Tab I, Ex. 4 at 40.

[18] Pl. Tab I, Ex. 1 at 161-162.

[19] Pl. Tab I, Ex. 6 at 97-98.

[20] Def. Ex. J.

[21] Fed. R. Civ. P. 56(c) (2007).

[22] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

a reasonable jury could return a verdict for the nonmoving party."[23]

A party moving for summary judgment has the initial burden of supporting its motion by reference to evidence which is capable of being admissible in a trial.[24] If this initial requirement is satisfied, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial."[25] The nonmoving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims.[26] The facts the nonmovant relies on for these purposes also must be demonstrated by evidence that is capable of being admissible in a trial.[27]

In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[28]

## III. DISCUSSION

Defendant Hollander asserts that Plaintiff's Breach of Express Warranty (Count I) must be dismissed because: 1) Defendant did not breach the express warranty;[29] 2) the contract remedy for breach of express warranty did not fail in its essential purpose; and 3) the contract

---

[23] Id.

[24] Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n. 11 (3d Cir. 1999).

[25] Fed. R. Civ. P. 56(e)(2).

[26] Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

[27] Callahan, 182 F.3d at 252 n. 11.

[28] Anderson, 477 U.S. at 255.

[29] This point is raised but not briefed by Defendant.

precludes incidental and consequential damages by limiting the remedy for breach of express warranty to "reasonable efforts" to repair the system. The contract limits the remedy for breach of express warranty to "commercially reasonable efforts to correct [PowerLink's] unavailability, interruption, delay, error, omission, bug or other failure as soon as reasonably possible."[30] The contract also disclaims consequential and incidental damages: "IN NO EVENT WILL ADP HOLLANDER BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTAL DAMAGES WHICH CLIENT MAY INCUR OR EXPERIENCE ON ACCOUNT OF ENTERING INTO OR RELYING UPON THIS AGREEMENT. . ."[31]

Defendant asserts that Counts II and III must be dismissed because the contract expressly disclaims implied warranties of merchantability and fitness for a particular purpose. The relevant language reads: "EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS OR EQUIPMENT."[32]

Defendants claim that it is significant for summary judgment purposes that: 1) Plaintiff's officers testified in their depositions that, at the time they signed the contract, they had read and understood the terms of the Contract and believed those terms were fair, and 2) the Contract is virtually identical to previous contracts entered into between the same parties for prior versions of the software. As to Count I, the Contract clearly excludes every type of damages except actual

---

[30] Contract § 13.

[31] Contract ¶ 3 (emphasis in original).

[32] Contract ¶ 13 (emphasis in original).

damages (i.e., an obligation to repair the system). Defendants also call attention to the "conspicuous" disclaimer of the implied warranties of merchantability (Count II) and fitness for a particular purpose (Count III) contained in the Contract.

Plaintiff argues that the damages limitation Defendant relies upon must not be enforced because the contractually provided remedy failed in its essential purpose and/or the limitation on damages is unconscionable. Plaintiff argues that the preclusion of implied warranties provision is unconscionable because Defendant knew but failed to disclose that the PowerLink 2.0 software had many unresolved problems.

a.  Count I

A remedy "fails of its essential purpose" when it "deprives either party of the substantial value of the bargain."[33] This typically arises when a contract provides an exclusive remedy of repair and the seller is unwilling or unable to put the goods in warranted condition.[34] The Third Circuit has held that "a delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair," and the buyer does not need to demonstrate negligence or bad faith on the part of the seller.[35] Here, Plaintiff argues that the remedy available under the express warranty failed of its essential purpose and, therefore, the consequential and incidental damages Plaintiff seeks, which are otherwise explicitly precluded by the contract, must be made available. Defendant disputes both components of this argument.

---

[33] Earl Brace & Sons v. Ciba-Geigy Corp., 708 F. Supp. 708, 710 (W.D. Pa. 1989).

[34] New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d 919 (Pa. Super. 1989).

[35] Chatlos Systems, Inc. v. National Cash Register Corp., 635 F.2d 1081, 1085 (3d Cir. 1980).

*The Limited Remedy Term*

The limited remedy provided for breaches of PowerLink 2.0's express warranty requires Hollander to "use commercially reasonable efforts to correct [the System's] unavailability, interruption, delay, error, omission, bug or other failure as soon as reasonably practicable."[36] All other remedies are expressly precluded under the contract. Defendant Hollander states that it did correct the problems with the system in a reasonable amount of time. However, the parties dispute the amount of time it took Hollander to correct the problems and to make PowerLink 2.0 work correctly. Plaintiff argues that it experienced significant problems with the software for about 16 months, and continues to experience minor problems with this software to this day. Plaintiff asserts that these problems were unreasonable, unforeseeable to Plaintiff (but not to Defendant) and caused significant business losses. Plaintiff sets forth evidence showing a $500,000 loss in the six months following the installation of PowerLink 2.0. While some disruption of normal business routines might be usual or expected following a software upgrade, as would some additional expenditure of employee time and some short term impairment in efficiency,[37] Plaintiff also puts forth evidence suggesting that the problems in this case went well beyond foreseeable disruption of normal business routines. Because the extent and duration of the software problems were unforeseeable to Plaintiff, and Plaintiff allegedly experienced an excessive delay before Defendant successfully corrected the problems, Plaintiff argues that the contractual remedy clause limiting the remedy for breach of contract to repairs "failed of its essential purpose."

Defendant asserts that it made reasonable efforts to keep Plaintiff's losses at a

---

[36] Contract ¶ 13.

[37] Chatlos, 635 F.2d at 1087.

9

minimum once the software was installed, but Plaintiff's evidence raises a question of fact as to whether the efforts were reasonable and whether the problems were corrected in a timely manner. The evidence also raises a question of fact as to whether Defendant knew that the software contained unresolved problems at the time of its sale to Plaintiff. Further, the parties have a factual dispute about whether Plaintiff or Defendant was the primary source of the problems with the software system. The Court finds genuine issues of material fact as to whether the contract remedy failed of its essential purpose.

*Disclaimer of Consequential and Incidental Damages*

As the only damages Plaintiff seeks are consequential and incidental damages, the Count must now decide whether Plaintiff has colorable claim for consequential and incident damages, despite the contract term disclaiming such remedies.[38] If it does not, Count I of Plaintiff's complaint must be dismissed on summary judgment despite the genuine issues of material fact as to whether the contractual remedy fails of its essential purpose.

There is mixed guidance from the Third Circuit as to whether a contract term disclaiming incidental and consequential damages is automatically ineffective, without an additional unconscionability inquiry, if the contractual remedy fails in its essential purpose. The cases in which the Third Circuit has squarely considered this question do not involve application of Pennsylvania

---

[38] Commercial contracts in Pennsylvania are governed by the Pennsylvania Commercial Code. Generally, limitation of liability clauses in commercial contracts are valid and enforceable, but the statute establishes exceptions to this general rule. Section 2719(b) states: "where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided [in the general remedy provisions] in this title." Section 2719(c) reads: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."

law.[39] Lacking clear guidance from the appellate courts of Pennsylvania and the Third Circuit, there is some flux in what the courts in the Eastern District of Pennsylvania have held regarding the relationship between exclusion of damages clauses and failure of exclusive remedies.

Plaintiff argues, citing Caudill Seed & Warehouse Company v. Prophet 21, Inc.,[40] that the failure of an exclusive remedy clause is inextricably linked to other limitation on liability provisions, so that if the exclusive remedy term is found to be invalid, consequential and incidental damages will be available. In other words, if the limited remedy fails, so does the consequential damages exclusion, even if the latter clause is not unconscionable.[41] In Caudill Seed, the Honorable Lowell Reed described this issue as a "legal quagmire that has divided courts across the nation." He recognized that the district courts within the Third Circuit generally favor the Chatlos Systems, Inc.

---

[39] See, e.g., Chatlos, 635 F. 2d. at 1083 (applying New Jersey law and finding that the consequential damage disclaimer may be upheld if not unconscionable even if the limited remedy fails of its essential purpose, but noting that the two inquiries are related); Viking Yacht Co., Inc. v. Composite One LLC, No. 09-3558, 2010 WL 2616862 (3d Cir., May 14, 2010) (applying New Jersey law and framing the question as whether it was unconscionable for the buyer to retain the risk of consequential damages upon the failure of the essential purpose of the exclusive limitation of remedies; i.e. whether the damages exclusion would render the available damages unconscionably low); cf. Ragen Corp. v. Kearney & Trecker Corp., 912 F.2d 619, 625 (3d Cir. 1990) (applying Wisconsin law and holding that "when the exclusive remedy fails in its essential purpose, the buyer can proceed to any remedy available under the UCC, including consequential damages, even if excluded by contract").

The court in Polymer Dynamics noted that the prevailing interpretation of Pennsylvania law by the Eastern District of Pennsylvania, though in flux, is that the limited remedy of repair and an exclusion of consequential damages are two independent ways of attempting to limit recovery for breach of warranty. Polymer Dynamics, Inc. v. Bayer Corp., No. 99-4040, 2007 WL 2343796 at *13-14. (E.D. Pa. August 1, 2007). On appeal, the Third Circuit issued a non-precedential opinion (Polymer Dynamics, Inc. v. Bayer Corporation, 341 Fed. Appx. 771, 773 (3d Cir. 2009)) upholding without discussion the district court's ruling that "Polymer's 'failure of exclusive remedy' proposed charge was improper because the limited remedy of repair and an exclusion of consequential damages are two independent ways of attempting to limit recovery for breach of warranty." Polymer Dynamics, Inc., 2007 WL 2343796 at *14, citing Chatlos.

[40] Caudill Seed & Warehouse Co. v. Prophet 21, Inc., 123 F. Supp. 2d 826, 831-32 (E.D. Pa. 2000)

[41] Strickler v. Peterbilt Motors Co., et al., No. 04-3628, 2005 U.S. Dist. LEXIS 10231, *10 (E.D. Pa. May 27, 2005).

v. National Cash Register Corporation[42] approach of enforcing damage disclaimers unless they are unconscionable, even when the exclusive remedy is found to have failed in its essential purpose, but disagreed and opted to take a different approach.[43]  This Court is inclined to follow the approach described in Caudill Seed, under which Count I survives Defendant's Motion for Summary Judgment.

In the alternative, Plaintiff argues that even if the Court follows the Chatlos approach, Plaintiff is entitled to consequential and incidental damages.  Under the Chatlos approach, the Court must determine whether the disclaimer of damages term is unconscionable.  It may consider the failure of the repair remedy as one factor in determining whether the damages disclaimer was unconscionable.[44]  Taking into account the genuine issues of material fact as to the failure of the repair remedy, the dispute over the extent of the damages claimed and the degree of disruption in the normal business routines,[45] and the dispute over the factors discussed in Section b, *infra*, the Court finds genuine issues of material fact also preclude summary judgment on Count I under this alternative analysis.

Finally, Plaintiff suggests, through factual allegations, that Defendant acted in bad faith.  The majority of courts faced with this issue have found that bad faith conduct on the part of

---

[42] Chatlos, 635 F. 2d. at 1083 (applying New Jersey law and finding that the consequential damage disclaimer is independent from the limited remedy provision, and the former is valid unless unconscionable even when the remedy has failed in its essential purpose).

[43] Caudill Seed, 123 F. Supp. 2d. at 831.

[44] Viking Yacht Co., 2010 WL 2616862 at *12-13.

[45] Id.

the seller can preclude enforcement of otherwise valid limitation of damages clauses.[46]  In Werner,

the court wrote: "I am persuaded by the internal logic and reasonableness of this rule and predict that

the Pennsylvania courts would not depart from this majority approach, particularly when the

Pennsylvania Code imposes a duty of good faith in every contract thereunder."[47]  This Court agrees

that buyers should not be left without a remedy where informational asymmetry about the allocation

of risks exists because the seller, but not the buyer, is capable of determining risk.  For all of the

foregoing reasons, the Court denies Defendant's motion as to Count I.

        b.      <u>Counts II and III</u>

Plaintiff also claims that because there are genuine issues of material fact as to

whether the contract term precluding claims based on implied warranties are unconscionable

Counts II and III should survive summary judgment.  Under Pennsylvania law, a contract term is

deemed unconscionable if a party "lacked [] meaningful choice" and the term "unreasonably

favors" one party.[48]  To satisfy that standard, Plaintiff avers that it had no choice about upgrading

to PowerLink 2.0 because its business was dependent on PowerLink 1.0 and Plaintiff was told that

PowerLink 1.0 would no longer be supported by Defendant once PowerLink 2.0 was released.

By purchasing PowerLink 2.0, rather than a competitor's product, Plaintiff could avoid re-coding

every item in their inventory and training all staff to use a new system.  Plaintiff also believed,

---

[46] <u>Werner Kammann Maschinenefabrik GmbH v. Max Levy Autograph, Inc.</u>, Civ. Act. No. 01-1083, 2002 WL 126634 at *4 (E.D. Pa. January 31, 2002), (citing <u>Christina Marine Serv. Corp. v. Seaboard Shipping Corp.</u>, Civ. Act. No. 96-8705, 1997 WL 587292 (E.D. Pa. Sept. 10, 1999); <u>Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp.</u>, 817 F. Supp. 235, 243 (D.N.H. 1993); <u>Long Island Lighting Co. v. Transamerica Delaval, Inc.</u>, 646 F. Supp. 1442, 1458-59 (S.D.N.Y 1986)).

[47] <u>Werner</u>, 2002 WL 126634 at *4 (citing 13 Pa.C.S.A. § 1203).

[48] <u>Hanover Architectural Prods. Inc. v. U.S. Filter/JWI Inc.</u>, No. 05-S-436, 2006 WL 4058355, *414 (Pa. Com. Pl., March 27, 2006).

based on Defendant's representations, that PowerLink 2.0 would be an upgrade which would help them achieve their goal to expand the company's business. In addition, Plaintiff had sucessfully used Defendants products for a total of nearly twenty years. Therefore, Plaintiff felt it had no "meaningful choice" but to accept the form contract Defendant offered. At the time, the liability clauses, which clearly favor Defendant, seemed fair because Plaintiff, unlike the Defendant, did not know that Defendant's product had unresolved problems which would be detrimental to its business. There are facts suggesting that the parties did not have equal knowledge of the risks that were being allocated by contract, and therefore the bargaining power was unequal, though both parties are business entities.

Plaintiff claims that the company experienced a 16-month long period of system problems, severely impacting its business. Plaintiff believes that Defendant Hollander knew that this was likely to be the case, because the Beta testing of the system revealed significant problems with the software which were not corrected before sale to and installation for Plaintiff, but that Defendant nevertheless pushed Plaintiff to purchase the new version. Plaintiff alleges that Hollander's release of PowerLink 2.0 had been delayed by several years, and the developers were under significant pressure to release the product whether or not it was ready for distribution. Whether Defendant was aware of the problems PowerLink 2.0 would cause for Plaintiff's business is a disputed factual issue. The Court finds that there are genuine issues of material fact as to what Defendant knew and what Defendant communicated to Plaintiff, as well as to the relative bargaining power of the parties given their unequal understanding of the risks involved in installing the new product. These factual issues must be resolved before the Court can determine whether the disputed contract terms are unconscionable as a matter of law.

Accordingly, Defendant's Motion for Summary Judgment is be denied as to Counts II and III as well.

## IV.    CONCLUSION

With respect to Count I, the Court finds genuine issues of material fact as to whether the limited remedy provision associated with the express warranty provision is unenforceable as it "fails in its essential purpose."[49]  Specifically, there are questions of fact remaining as to whether Plaintiff was deprived of the substantial benefit of the bargain because Defendant was unable to fix the software issues within a reasonable period of time.  Because a finding on this issue is inextricably linked to the validity of the clause that excludes incidental and consequential damages, the Court denies Defendant's motion for summary judgment on Count I.

Although it is a closer question, Counts II and III survive summary judgment as well, because the Court finds genuine issues of material fact which must be resolved before the Court can determine whether the relevant contract terms were unconscionable as a matter of law.[50]  Although much relied upon by Defendant, the fact that Plaintiff's officers felt that the Contract was fair at the time they signed it does not mean Plaintiff will *now*, after discovery, not be able to show that the terms were unconscionable based on Defendant's alleged bad faith actions both before and after the contract was signed.

---

[49]Under Pennsylvania law, incidental or consequential damages may be excluded unless: (1) the exclusion is unconscionable; or (2) the limited remedy fails of its essential purpose.  13 Pa. Cons. Stat. § 2719 (2005).

[50] Stanley A. Klopp, Inc. v. John Deere Co., 510 F. Supp. 807, 810 (E.D. Pa. 1981) (unconscionability is a question of law that a Court may decide on summary judgment).